**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **AMY HURST, individually and on behalf of all others similarly situated,** | |
| *Plaintiff,* | Case No. _____ |
| **v.** | |
| **MOSHY GAMING LLC, d/b/a MOOZI CASINO,** | **CLASS ACTION** |
| *Defendant.* | **JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Amy Hurst ("Plaintiff"), individually and on behalf of all others similarly situated, hereby alleges the following against Defendant Moshy Gaming LLC, d/b/a Moozi Casino ("Defendant" or "Moozi Casino"), based upon, *inter alia*, the investigation made by her counsel, and based upon information and belief, except as to those allegations and experiences specifically pertaining to Plaintiff which are based upon her personal knowledge.

## NATURE OF THE CASE

1. This case arises out of Defendant's operation of an illegal online casino in violation of Alabama law.

2. Defendant owns and operates Moozi Casino (https://moozi.com/lobby), one of the most popular and profitable casino and sweepstakes gaming websites on the planet.

3. Through Moozi Casino, users can access and play thousands of popular casino games, including, *inter alia*, jackpots, slots, roulette, baccarat, and Megaways titles (the "Chance Games"). Some of these games are even hosted by live dealers in real-time, further mimicking the experience of a physical casino.

4.      The Chance Games offered on Moozi Casino are unequivocally games of chance. Their outcomes are determined primarily, if not exclusively, by randomization—rendering them indistinguishable from the games found in traditional, brick-and-mortar casinos.

5.      To evade regulatory scrutiny and mislead consumers, Moozi Casino markets itself as a "social casino." This designation is purely cosmetic, designed to create the false impression that the platform provides benign, entertainment-only gameplay, when in reality it facilitates and profits from illegal gambling.

6.      In practice, Moozi Casino operates in a manner virtually indistinguishable from a traditional online casino. Players can purchase in-game currency, use that currency to wager on games of chance, and subsequently redeem their winnings for cash or gift cards. Moozi Casino's rapid growth and popularity are directly attributable to its realistic casino-like experience, which includes authentic gameplay, partnerships with well-known gaming studios, robust bonus programs, and fast, reliable payout systems.

7.      Moozi Casino derives its revenue primarily through the sale of in-game currency—specifically, virtual coins—which function as a de facto substitute for real money and are necessary for users to participate in games on the platform.

8.      The platform features two forms of virtual currency: "Gold Coins" and "Sweepstakes Coins" or "Sweeps Coins." While Gold Coins are offered with promotional bonuses such as sign-up rewards and daily refills, ensuring continuous user engagement, they are marketed as having no real-world monetary value.

9.      However, Moozi Casino conceals the true nature of its business model. The purchase of Gold Coins is typically "bundled" with Sweeps Coins—another currency that does carry real-

world value.[1]

10.     Players use Sweeps Coins to enter sweepstakes-style games, which offer the chance to win cash or gift cards.

11.     After meeting a minimal 1x playthrough requirement and collecting at least 100 Sweeps Coins, players can redeem them for cash. The only accepted payment method on Moozi Casino is bank transfers. In effect, players are wagering a valuable currency (Sweeps Coins) on games of chance in order to obtain prizes of greater value—a textbook definition of gambling.

12.     The structure and pricing of Moozi Casino's virtual currency offerings make clear that the platform's true aim is to facilitate and profit from the sale of Sweeps Coins. Despite nominal distinctions between the two types of currency, the underlying games are purely games of chance; they require little to no skill to determine the outcome.

13.     Virtual gambling is highly addictive. Moreover, under Alabama law, gambling is strictly regulated. The state's regulatory framework mandates that such games may only be offered by licensed operators at approved physical locations. Moozi Casino's operations flout these legal requirements by providing unlicensed gambling services to Alabama residents via the internet.

14.     Plaintiff, individually and on behalf of all other similarly situated, seeks all available remedies at law and equity, including damages, restitution, declaratory, and injunctive relief.

## PARTIES

15.     At all times material hereto, Plaintiff Amy Hurst has been a resident of Chambers

---

[1]  According to player reviews, Moozi Casino's most enticing feature is its significant bonus bundle. https://www.dimers.com/sweepstakes-casinos/moozi (last visited June 30, 2025).    Upon registration, new users automatically receive 20,000 Gold Coins and 1 Sweeps Coin. https://time2play.com/casinos/reviews/moozi/ (last visited June 30, 2025).

County, Alabama.

16.    Defendant is a company formed in Gibraltar and with its headquarters at 251 Little Falls Drive, Wilmington, Delaware, 19808. Moshy Gaming LLC owns and operates a gambling website (available at https://moozi.com/lobby) under the brand "Moozi Casino." Moshy Gaming LLC conducts business within the venue of this District and throughout Alabama generally, which websites and operations are not permitted and are illegal under Alabama law.

## JURISDICTION AND VENUE

17.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (1) the amount in controversy, exclusive of costs and interest, exceeds the sum of $5,000,000.00, (2) the proposed Class is comprised of at least 100 members, and (3) complete diversity exists between at least one plaintiff and one defendant.

18.    This Court has personal jurisdiction over Defendant because, as further described below, Defendant does business and is authorized to conduct business here. Defendant sells its products to consumers in Alabama, including to Plaintiff.

19.    Moreover, Defendant conducts business in Alabama and actively disseminates targeted advertisements within the state with the intent of promoting and selling its products and services to consumers there. As such, Defendant does business with sufficient minimum contacts in Alabama, and/or otherwise intentionally avails itself of the Alabama market.

20.    Defendant has purposefully directed its activities toward this District.

21.    Defendant has purposefully availed itself of the privileges of conducting activities in this District.

22.    Defendant's claim arises out and relates to Defendant's forum-related activities.

23.    The exercise of jurisdiction over Defendant is reasonable.

24.     Upon information and belief, Defendant localizes its game for each market where it is distributed, including the United States. This localization includes changes to the language and currency presented in Moozi Casino.

25.     Upon information and belief, Defendant has sold millions of dollars of virtual items to thousands of Alabama residents, most of which are repeat purchases by the same customers, by contracting with the customers to sell virtual coins and other goods in exchange for legal tender.

26.     Moozi Casino facilitates ongoing economic activity between thousands of Alabama players and Defendant.

27.     Upon information and belief, Defendant directly controls whether consumers in Alabama can complete purchases from Moozi Casino.

28.     Upon information and belief, Defendant has the capability to determine where its customers are from, including whether purchases are being made from Alabama.

29.     Upon information and belief, Defendant has the capability to prevent Alabama residents from completing purchases or placing wagers in Moozi Casino, but has chosen to accept those purchases and wagers from Alabama residents. For example, other gambling applications prevent transactions from residents of states where gambling is unlawful.

30.     Upon information and belief, Defendant has taken no steps to restrict Alabama residents' access to Moozi Casino or to restrict the ability of Alabama residents to make purchases from Moozi Casino.

31.     Defendant aggressively advertises Moozi Casino in the United States, including in this District. Those advertisements include linear media, social media advertisements and advertisements in other mobile applications.

32.     Upon information and belief, these advertisements for Moozi Casino were designed

and directed to attract consumers in the United States, including this District, to play Moozi Casino.

33.     Upon information and belief, Defendant has the capability of targeting its Moozi Casino advertisements by geography and the capability of excluding residents of Alabama from the reach of Defendant's advertisements for Moozi Casino.

34.     Upon information and belief, Defendant partners with Meta Platforms, Inc. to serve targeted online ads at users of other companies' websites, games and online services. Upon information and belief, these ads are targeted at players that Defendant identifies as potentially interested in Moozi Casino, including residents of Alabama. Upon information and belief, Defendant utilizes unique device identifiers and Google Advertising ID and IP addresses in connection with these targeted ads. This information allows Defendant to identify the geographic location of its ad targets, including whether they are in Alabama.

35.     Upon information and belief, Defendant has taken no steps to restrict its advertisements for Moozi Casino from reaching residents of Alabama.

36.     Venue is proper in this District because a substantial part of the events or omissions giving rise to the claim occurred in this District. All of Plaintiff's activities and losses in Moozi Casino occurred in this District.

37.     Plaintiff alleges, upon information and belief, that Defendant conducts professional and commercial activities in Alabama on a substantial, continuous, and systematic basis and therefore Defendant is subject to the general jurisdiction of the courts of this state.

38.     Plaintiff further alleges, upon information and belief, that the claims asserted in this complaint arise out of or are related to each of the Defendant's professional and commercial activities within Alabama, and therefore the Defendant is subject to the specific jurisdiction of the courts of this state.

39.     The amount in controversy exceeds the jurisdictional minimum of this Court.

## FACTUAL BACKGROUND AND COMMON ALLEGATIONS

### I.      *The Problem of Online Gambling*

40.     Gambling addiction in the United States has escalated into a significant public health crisis, fueled by the rapid expansion of online casinos and sports betting platforms, including so called "social casinos."

41.     Since the Supreme Court's 2018 decision to legalize sports betting, the number of states with legal sportsbooks has surged from 1 to 38, with total sports wagers increasing from $4.9 billion in 2017 to $121.1 billion in 2023.[2] This proliferation has been accompanied by a dramatic rise in gambling addiction cases.[3]

42.     Approximately 2.5 million adults in the U.S. suffer from severe gambling problems, while an additional five to eight million experiencing significant issues.[4] Alarmingly, individuals with gambling disorders are 15 times more likely to commit suicide than the general population.[5]

43.     Between 2018 and 2021, the Nation Council on Problem Gambling (NCPG) estimated that the risk of gambling addiction grew by 30%. NCPG has also seen significant increases in calls, texts and chats to the National Problem Gambling Helpline—roughly a 45%

---

[2] UC SAN DIEGO TODAY, https://today.ucsd.edu/story/study-reveals-surge-in-gambling-addiction -following-legalization-of-sports-betting (last visited June 30, 2025).

[3] *See id*.

[4] Clea Simon, *Gambling problems are mushrooming*, THE HARVARD GAZETTE, https://news. harvard.edu/gazette/story/2025/01/online-gambling-is-on-the-rise-panel-says-we-need-to-act-no w/#:~:text=The%20National%20Council%20on%20Problem%20Gambling%20estimates%20th at%20about%202.5,of%20callers%20is%20skewing%20younger (last visited June 30, 2025).

[5] WORLD HEALTH ORGANIZATION, https://www.who.int/news-room/fact-sheets/detail/gambling #:~:text=A%20Swedish %20study%20estimated%20that,the%20general%20population%20(4) (last visited June 30, 2025).

increase in calls between 2021 and 2022.[6]

44.     Further, internet searches for help with gambling addiction, such as "am I addicted to gambling", have cumulatively increased 23% nationally since *Murphy v. NCAA* through June 2024. This corresponds with approximately 6.5 to 7.3 million searches for gambling addiction help-seeking nationally, with 180,000 monthly searches at its peak.[7]

45.     The surge in gambling addiction is particularly pronounced among young men, with 10% exhibiting behaviors indicative of gambling addiction, compared to 3% of the general population.[8] Online platforms, including social casinos, have been identified as significant contributors to this trend. These platforms often employ addictive design features, such as near-miss outcomes, fake limited-time sales, and variable reinforcement, to keep users engaged.

46.     The addiction and fallout related thereto is not limited to gamblers. It has a ripple effect that negatively impacts spouses, partners, children, and employers. Moreover, despite the growing prevalence of gambling addiction, funding for treatment remains insufficient.

47.     In Alabama, it is illegal to operate and offer online gambling casinos, including websites that offer slot machines, blackjack, roulette, and poker. *See generally* Ala. Code §§ 13A-12-20 *et. seq.* In this regard, Alabama has a fundamental and deep-rooted public policy against gambling.

## II.     Defendant Uses Free "Social Gaming" as a Pretext for Real, Online Gambling.

48.     Moozi Casino advertises itself as a "social casino" website to avoid gambling

---

[6] Cait Huble, *NCPG Statement on the Betting on Our Future Act*, NATIONAL COUNCIL ON PROBLEM GAMBLING, https://www.ncpgambling.org/news/ncpg-statement-on-the-betting-on-our-future-act (last visited May 28, 2025).

[7] UC SAN DIEGO TODAY, https://today.ucsd.edu/story/study-reveals-surge-in-gambling-addiction-following-legalization-of-sports-betting (last visited May 28, 2025).

[8] Wayne Parry, ASSOCIATED PRESS, *Poll shows young men in the US are more at risk for gambling addiction than the general population,* https://apnews.com/article/sports-betting-compulsive-gambling-addiction-d4d0b7a8465e5be0b451b115cab0fb15 (last visited May 28, 2025).

regulations and reassure potential players that it offers casino-style games purely for entertainment, without real-money stakes. Moozi Casino claims it is a "free-play" casino. However, this representation is false and misleading. In practice, Moozi Casino enables users to engage in real-money gambling through its system of Sweeps Coins, deceiving consumers into believing they are participating in harmless gameplay when, in fact, they are wagering something of value for the chance to win tangible prizes.

49.     The Moozi Casino platform offers a wide variety of casino-style games, including digital slot machines, blackjack, poker, roulette, and lottery-style wheels. Through these games, Defendant provides users the opportunity to win sweepstakes prizes by accumulating and redeeming so-called Sweeps Coins.



50.     Users can access Moozi Casino via its website available throughout the United States, including in Alabama.

51.     Upon accessing the platform, users are presented with an array of casino-style games, prominently including slots, roulette, poker, and blackjack.

52. Once a user selects a game, they are prompted to wager either Gold Coins or Sweeps Coins to play.

53. In the illustration above, Moozi Casino makes it easy to switch between wagering Gold Coins and Sweeps Coins. This simple mechanism is designed to make it as convenient as possible for players to transition to gambling with real-world stakes. Players who start out having fun can quickly and effortlessly shift to risking actual money without fully appreciating the financial consequences.

54. After selecting their game, players then place their wagers by selecting the amount of Gold Coins or Sweeps Coins they wish to stake per round or spin. Depending on the outcome of the game, players may win additional coins, functioning in the same manner as traditional gambling wagers.



55. In addition to automated games, Moozi Casino also offers a "live casino" feature, where users play games like dominos and roulette with live human dealers who are visible through webcam streams, closely mimicking the experience of a physical casino.



56.    In sum, the games of chance offered by Moozi Casino—including slots, blackjack, and roulette—constitute gambling. These games are functionally identical to those offered in traditional casinos such as those in Las Vegas.

57.    When consumers first visit the Moozi Casino platform, they are provided with a quantity of free Gold Coins. Additional Gold Coins may be obtained through promotional giveaways and other marketing efforts.

58.    Consumers also use Sweeps Coins to play games on the platform. Unlike Gold Coins, Sweeps Coins are redeemable for cash and gift cards. Upon information and belief, each Sweeps Coin is equal in value to $1 USD in prizes, rendering Sweeps Coins a proxy for real money.

59.    Plaintiff and, upon information and belief, the vast majority of players on the Moozi Casino platform regularly buy additional coin bundles when they run out of Sweeps Coins even when they already possess unused Gold Coins. The fact that players are making these repeated purchases when they have ample Gold Coins confirm that these transactions are driven entirely by the desire to obtain Sweeps Coins for real-money gambling, rather than for the Gold Coins that Defendant sells.

60.     Users may acquire Sweeps Coins through various means, including promotional giveaways, participation in contests or daily missions, and most commonly, through the purchase of Gold Coins. The more Gold Coins a user buys, the more Sweeps Coins they receive as an alleged "bonus." In reality, Defendant uses the sale of Gold Coins as a vehicle for the sale of Sweeps Coins, misleadingly marketing the transaction to obscure the real-money nature of the exchange.



61.     Once obtained, users gamble with Sweeps Coins in the same manner as they do with Gold Coins. However, because Sweeps Coins are redeemable for real-world value, users who wager Sweeps Coins are engaging in gambling: staking something of value on an event determined predominantly by chance with the expectation of winning additional value in the form of redeemable prizes.

62.     Furthermore, Defendant imposes a "1x playthrough" requirement on bonus Sweeps Coins and meet a minimum redemption threshold of 100 SC before they can withdraw. This restrictive condition significantly impairs users' ability to redeem winnings and effectively forces continued gambling activity. The playthrough requirement operates as a coercive mechanism, compelling users to risk further losses under the guise of accessing previously earned rewards. This

practice is misleading, particularly when users are initially lured to the platform by representations that it is merely a "social casino" offering free-to-play entertainment. In reality, the platform's design systematically incentivizes and prolongs gambling behavior while obscuring the difficulty of actually obtaining monetary rewards—underscoring the predatory nature of Defendant's operations.

63.    Alabama Code §§ 13A-12-20(5) broadly defines a "gambling device" as "any device, machine, paraphernalia or equipment that is normally used or usable in the playing phases of any gambling activity, whether that activity consists of gambling between persons or gambling by a person involving the playing of a machine."

64.    Alabama Code §§ 13A-12-20(10) broadly defines a "slot machine" as "a gambling device that, as a result of the insertion of a coin or other object, operates, either completely automatically or with the aid of some physical act by the player, in such a manner that, depending upon elements of chance, it may eject something of value. A device so constructed or readily adaptable or convertible to such use is no less a slot machine because it is not in working order or because some mechanical act of manipulation or repair is required to accomplish its adaptation, conversion or workability. Nor is it any less a slot machine because apart from its use or adaptability as such it may also sell or deliver something of value on a basis other than chance."

65.    Alabama Code §§ 13A-12-20(11) broadly defines "something of value" as "any money or property, any token, object or article exchangeable for money or property or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein, or involving extension of a service entertainment or a privilege of playing at a game or scheme without charge."

66.    Users of Moozi Casino stake or risk something of value when playing the games of

chance offered on Defendant's platform. Specifically, players use Gold Coins or Sweeps Coins to participate in various casino-style games, the outcomes of which are determined predominantly by chance rather than skill. When using Sweeps Coins, players risk these digital tokens in hopes of winning additional Sweeps Coins, which may then be redeemed for cash or other real-world prizes. If the player wins, they retain or increase the number of coins wagered; if they lose, the coins are forfeited. This dynamic is materially distinct from traditional video games, where in-game currency is expended as a fee to play, irrespective of win or loss. In contrast, Moozi Casino mirrors the fundamental mechanics of real-money gambling, in which players risk a valuable consideration for the opportunity to win additional value.

67.    While some user interaction is involved, the outcomes of Moozi Casino's games are overwhelmingly determined by chance. Games such as digital slots, roulette, and lottery-style spins rely on random number generators or similar chance-based algorithms. Upon information and belief, the results of these games are not influenced by any player skill or decision-making, but are driven entirely by software that introduces randomness. As such, the element of chance predominates in determining game outcomes.

68.    The limited degree of user interaction does not remove Moozi Casino's games from the statutory definition of a "game of chance" or "contest of chance" under Alabama law.[9] Games commonly recognized as gambling, such as blackjack, craps, and interactive slot machines, also incorporate some player decisions or interactivity. Moozi Casino closely resembles so-called "I-Slots" (interactive slot machines), which allow limited user choice but are still fundamentally games of chance. The presence of user interaction in Moozi Casino does not negate the dominance of

---

[9] "Any contest, game, gaming scheme or gaming device in which the outcome depends in a material degree upon an element of chance, notwithstanding that skill of the contestants may also be a factor therein." ALA. CODE § 13A-12-20(3).

chance in determining outcomes.

69.     Even players with significant experience or familiarity with casino-style games can lose repeatedly if the game's randomizing mechanism is not favorable. Conversely, novice or inexperienced users may win if the randomized outcome happens to align in their favor. This inherent unpredictability underscores that the dominant factor in the outcome of each game is chance—not skill, strategy, or experience.

70.     Gold Coins and Sweeps Coins constitute things of value under Alabama law and other applicable gambling statutes. These coins provide players with access to services, entertainment, and the privilege of continued gameplay without charge. Sweeps Coins, in particular, function as a "representative of value" because they are redeemable for real-world prizes, including cash and gift cards.

71.     The casino-style games on Moozi Casino closely mimic the experience of traditional gambling establishments. These games feature audiovisual elements—including slot machine graphics, sounds, animations, and game mechanics—that replicate the look and feel of real-world casino games, further blurring the line between entertainment and gambling.

### III.     Defendant Resurrects Internet Sweepstakes Café Model from Early 2000s

72.     In the early 2000s, a widespread trend emerged in which unscrupulous operators attempted to circumvent state gambling laws by establishing so-called "Internet cafés." These businesses—often set up in suburban strip malls—purported to sell innocuous products such as internet access or long-distance calling minutes. In reality, the purchase of those goods was merely a front for what amounted to casino-style gambling: customers received "free" sweepstakes entries with each purchase, which they could then use to play slot machine-style games on computer terminals, with the chance to win real cash prizes.

73.    Most state gambling statutes define gambling as involving three core elements: (1) consideration, (2) chance, and (3) a prize. Operators of these Internet cafés attempted to sidestep the "consideration" element by claiming that the sweepstakes entries were promotional add-ons to legitimate purchases, akin to promotional sweepstakes run by large commercial brands. But this separation was illusory; the primary and intended purpose of the transaction was to enable gambling.

74.    Courts and law enforcement agencies across the United States uniformly concluded that these so-called sweepstakes promotions were thinly veiled gambling operations, and moved to shut them down under applicable state gambling laws.

75.    Moozi Casino now attempts to revive this discredited model. Defendant will urge the Court to accept the fiction that its operations are not gambling, but rather legal "sweepstakes" entertainment. That argument is not new—it is the same tactic employed by illegal gambling outfits in the early 2000s, which courts and regulators uniformly rejected.

76.    As detailed below, Moozi Casino employs a structurally identical business model: users ostensibly purchase "virtual coins" but receive "Sweeps Coins"—with real-world value—for use in casino-style games of chance. The inclusion of token "free" methods of entry and the marketing language around "sweepstakes" do not change the underlying legal reality. Courts have consistently found such models to be unlawful.

77.    Indeed, in *Larsen v. PTT, LLC*, 737 F. Supp. 3d 1076 (W.D. Wash. 2024), a federal court granted summary judgment against an online gaming operator whose structure mirrored Moozi Casino's.

78.    Defendant's attempt to rebrand illegal online gambling as a sweepstakes promotion is part of a familiar pattern already discredited by courts, regulators, and the public. Moozi Casino's

operations are not novel—they are a modern replica of a failed and unlawful model.

## IV.    All Purported Contracts with Defendant Are Void

79.    There are two independent and legally sufficient grounds upon which any purported

contract with Defendant is void and unenforceable.

80.    In Alabama, "[a]ll contracts founded in whole or in part on a gambling consideration

are void." Ala. Code §8-1-150 (2024).

81.    Thus, no contract was ever formed between the parties, and any purported contract

between Plaintiff and Defendant, and any contractually based defenses Defendant may raise are

likewise void.

82.    And the *entire* contract is void, because "even if the arbitration provision is severed

from the rest of any 'contract,' the arbitration provision itself is void as a matter of law pursuant to

§ 8–1–150." *Macon Cnty. Greyhound Park, Inc. v. Hoffman*, 226 So. 3d 152, 167 (Ala. 2016).

83.    Even if not void, they are unconscionable as the terms and conditions is an adhesion

contract.

84.    Parties cannot contractually agree to engage in conduct that is criminal or otherwise

contrary to public policy. Just as a person cannot lawfully contract to engage in forced labor, sex

trafficking, illicit drug sales, or other illegal conduct, neither can they enter into a valid and

enforceable agreement to participate in unlawful gambling. Any purported contractual relationship

between Plaintiff and Defendant—premised on participation in illegal gambling activity—is

therefore void ab initio.

85.    Accordingly, Plaintiff hereby voids any purported agreement or contract between

herself and Defendant. As a result, Defendant may not invoke any contractual defenses—including

arbitration clauses, choice-of-law provisions, or class action waivers—because no valid or

enforceable agreement exists.

**FACTS SPECIFIC TO PLAINTIFF**

***Plaintiff Amy Hurst's Experience***

86.     Plaintiff Hurst played Moozi Casino from approximately September 2024 to June 2025 during which she made many in-game purchases of Gold Coins and Sweeps Coins.

87.     Plaintiff Hurst accessed Moozi Casino from her residence in Alabama. Hurst received an initial allotment of Gold Coins and Sweeps Coins. After losing her initial allocation of free Gold Coins and Sweeps Coins, she began purchasing Gold Coins and Sweeps Coins from Defendant and did so from Alabama, which Defendant accepted.

88.     Plaintiff Hurst placed all of her wagers in Moozi Casino in Alabama.

89.     Overall, Plaintiff Hurst wagered and lost approximately $5,700.00 in real-world currency while using Moozi Casino and its games of chance. She lost the Sweeps Coins and Gold Coins she purchased from Defendant by wagering them in Moozi Casino's games of chance.

90.     By and through Moozi Casino's gambling features described above during the time period of approximately September 2023 to June 2025, Hurst was induced into making these purchases that she otherwise would not have made.

91.     As a result of Defendant's unfair, unlawful, and deceptive acts, Defendant was unjustly enriched.

92.     Plaintiff Hurst enjoys playing online games and has an ongoing interest in playing Moozi Casino if it were to change to be devoid of unlawful, deceptive and unfair business practices. Plaintiff Hurst therefore has an ongoing interest in Moozi Casino complying with state and federal gambling laws and consumer protection statutes.

## CLASS ALLEGATIONS

93.    Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b) on behalf of themselves and all others similarly situated defined as follows:

94.    The Class is defined as follows:

> All Alabama residents who, during the applicable limitations period, played and lost money wagering on Defendant's online casino games.

95.    **Numerosity.** Upon information and belief, there are hundreds, if not thousands, of Class members, so joinder of all members is impracticable. The precise number of class members and their identifies are unknown to Plaintiff currently but may be ascertained from Defendant's books and records and other third-party sources.

96.    **Commonality.** There are many questions of law and fact common to the claims of Plaintiff and the other members of the Class, and those questions predominate over any questions that may affect individual members of the Class. These common legal and factual questions, each of which may also be certified under Rule 23(c)(4), include the following:

    a.    Whether the games in Moozi Casino are gambling as defined under Alabama law;

    b.    Whether Defendant engaged in the conduct alleged in the Complaint;

    c.    Whether Defendant violates the statutes listed below in Counts I and II;

    d.    Whether Defendant violated statutes analogous to those alleged herein applicable;

    e.    Whether and how Defendant manipulates the odds in games offered in Moozi Casino;

    f.    Whether Plaintiff and the other Class members were damaged by Defendant's conduct; and

    g.    Whether Plaintiff and the other Class members are entitled to restitution or other relief.

97.     **Typicality**. Plaintiff's claims are typical of the claims of the Class because they were players of Moozi Casino who made in-game purchases of coins and wagered such coins as a result of Defendant's unlawful and wrongful conduct. The factual and legal basis of Defendant's liability to Plaintiff and to the other Class members are the same, resulting in injury to the Plaintiff and to all of the other members of the Class. Plaintiff and the other members of the Class have suffered harm and damages due to Defendant's unlawful and wrongful conduct.

98.     **Adequacy.** Plaintiff will fairly and adequately represent and protect the interests of the other members of the Class. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the other Class members and have the financial resources to do so. Neither Plaintiff nor her counsel have any interest adverse to those of the other members of the Class.

99.     **Predominance & Superiority.** Absent a class action, most Class members would find the cost of litigating their claims to be prohibitive and would have no effective remedy. The class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The damages or other financial detriment suffered by Plaintiff and putative class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be impracticable for members of the proposed Class to individually seek redress for Defendant's wrongful conduct.

100.     **Final Declaratory or Injunctive Relief.** Defendant has acted and failed to act on grounds generally applicable to the Plaintiff and the Class members, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members,

and making injunctive or corresponding declaratory relief appropriate for the Class as a whole.

## FIRST CAUSE OF ACTION
## DECLARATORY JUDGMENT
## 28 U.S.C. §§2201 *et seq.*

101.    Plaintiff incorporates by reference the allegations contained in paragraphs 1-100 of this Complaint.

102.    Plaintiff brings this count individually and on behalf of all other Class members.

103.    Alabama law strongly prohibits any form of gambling.

104.    In fact, gambling is constitutionally prohibited. Ala. Const., Art. IV, §65.

105.    In Alabama, gambling occurs when one "stakes or risks something of value upon the outcome of a contest of chance or a future contingent event not under her control or influence, upon an agreement or understanding that he or someone else will receive something of value in the event of a certain outcome." ALA. CODE § 13A-12-20(4).

106.    In Alabama, "Something of value" is defined as "[a]ny money or property, ... or article exchangeable for money or property or any form of credit or promise directly or indirectly contemplating transfer of money or property or of any interest therein or involving extension of a service entertainment or a privilege of playing at a ... scheme without charge." ALA. CODE § 13A-12-20(10).

107.    In Alabama, a game is chance-based, not skill-based, when more chance is involved in the outcome than skill. Moozi Casino operates an illegal gambling website wherein participants pay consideration for the chance to win a prize.

108.    The Chance Games offered by Moozi Casino are predominantly games of chance and do not involve any level of skill.

109.    The prizes Moozi Casino offers are valuable and can be used as or converted into

US currency.

110.     Moozi Casino operates an online casino, not a sweepstakes. In Alabama, even though the player is assured of her money's worth of some commodity and hence cannot lose, it is still illegal gambling. In fact, even paying back up to 98% of all money played is illegal gambling (where the typical sweepstakes payout is 50%). And the duration of traditional sweepstakes is limited, not indefinite, like Moozi Casino. And just because Plaintiff and Class members can play for free does not save Moozi Casino. The Alabama Supreme Court has long held that the availability of free chances is not necessarily dispositive of whether the game is a gambling scheme: "That the prize may go to someone who has paid nothing does not negative the fact that many have paid for their chance. Because some have not been drawn into the gambling phase does not render it any the less a lottery, with whatever of evil it engenders, as to the large public who have paid." *Barber v. Jefferson Cnty. Racing Ass'n, Inc.*, 960 So. 2d 599, 614 (Ala. 2006) (*quoting Grimes v. State*, 178 So. 73, 74 (Ala. 1937)). Moreover, Moozi Casino does not promote or market a good or service, it is the good or service. And Moozi Casino does not offer any free-play tokens available at any location in Alabama.

111.     Plaintiff and Class members each paid money or other things of value to Moozi Casino to play the Chance Games for the sole purpose of winning a prize.

112.     Plaintiff and Class members seek an order declaring that (1) Moozi Casino is illegal gambling in Alabama and (2) any authority under which it purports to operate is unconstitutional, as well as a permanent injunction enjoining Defendant from operating Moozi Casino in Alabama, with disgorgement of profits.

113.     Plaintiff and Class members also seek a speedy declaratory judgment hearing pursuant to Fed. R. Civ P. 57.

## SECOND CAUSE OF ACTION
## ALABAMA GAMBLING LOSS RECOVERY STATUTE
### Ala. Code §§ 8-1-150, *et seq.*

114.    Plaintiff repeats, realleges, and incorporates the allegations in Paragraphs 1–100 by reference as if fully set forth herein.

115.    Plaintiff brings this count individually and on behalf of all other Class members.

116.    Plaintiff is similarly situated as other Class members, as each are Alabama residents who have either paid and lost money or other things of value on Moozi Casino in the last six months, or are the spouse, child, or next of kin of an Alabama resident who paid and lost money or other things of value on Moozi Casino in the last six months.

117.    Moozi Casino operates an illegal gambling website that is accessible in Alabama.

118.    In the last six months, Plaintiff and other Class members paid and lost money or other things of value to Defendant on Moozi Casino.

119.    Plaintiff and other Class members demand recovery of the money or other things of value paid and lost to Defendant on Moozi Casino in the last six months in an amount to be determined at trial, including interest.

120.    Plaintiff also seeks recovery of money or other things paid and lost on Moozi Casino in the last twelve months on behalf of the spouses, children, and next of kin of the losers.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests, individually and on behalf of all others similarly situated, the following relief:

1.    For an order certifying this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure, defining the Class as requested herein, appointing Plaintiff as class representative and her counsel as class counsel;

2.      Awarding Plaintiff all economic, monetary, actual, consequential, compensatory, and punitive damages available at law and to be determined by proof;

3.      Awarding Plaintiff and the class members appropriate relief, including actual and statutory damages;

4.      Awarding Plaintiff's reasonable attorneys' fees, costs, and other litigation expenses;

5.      Awarding pre- and post-judgment interest, as allowable by law;

6.      For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

7.      Declaratory and equitable relief, including restitution and disgorgement;

8.      For public injunctive relief as the Court may deem proper; and

9.      Awarding such further and other relief as the Court deems just, proper and equitable.

## JURY DEMAND

Plaintiff requests trial by jury of all claims that can be so tried.

Dated: July 3, 2025                    Respectfully submitted,


*/s/ David L. Selby, II*
David L. Selby, II (ASB-6994-Y62D)
Matthew J. Ford (ASB-6725-W58F)
BAILEY & GLASSER, LLP
3000 Riverchase Galleria, Suite 905
Birmingham, Alabama 35244
T:      (205) 988-9253
F       (205) 733-4896
E:      dselby@baileyglasser.com
        mford@baileyglasser.com

Scott Edelsberg
(CA Bar No. 330990
*pro hac vice forthcoming*)
EDELSBERG LAW, P.A.
1925 Century Park E #1700
Los Angeles, CA 90067
T:      (305) 975-3320
E:      scott@edelsberglaw.com

*Counsel for Plaintiff and the Proposed Class*