IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **AMY HURST, individually and on behalf of all others similarly situated,** | |
| *Plaintiff,* | |
| v. | **Case No. 3:25-cv-491-ECM-KFP** |
| **MOSHY GAMING LLC, d/b/a MOOZI CASINO,** | **CLASS ACTION** |
| *Defendant.* | |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

# TABLE OF CONTENTS

RELEVANT FACTUAL BACKGROUND.................................................................................3

LEGAL STANDARD...........................................................................................................5

ARGUMENT ......................................................................................................................6

    I.      Defendant has not met its Evidentiary Burden to Prove There was an Enforceable
Contract.............................................................................................................6

    II.     The Parties Never Formed an Arbitration Agreement. ...........................................8

          a.       The Terms Containing the Arbitration and Delegation Clauses are Void
Because They are Based on Gambling Consideration. ...................................8

          b.      There Were no Mutual Obligations, and Even if There Were, the Contract
Remains Void. ..........................................................................................12

          c.       There is no Mutual Assent; the Contract is Illusory.....................................14

          d.      Severability Does not Salvage the Arbitration Provision............................15

          e.       The Court—not an Arbitrator—Must Decide Arbitrability Because
Formation and Illegality Are at Issue. ........................................................16

          f.       Mere Reference to "Following" AAA Rules is not Clear and Unmistakable
Delegation. ...............................................................................................19

          g.      The Arbitration and Delegation Clauses are Unconscionable.....................20

    III.    Constitutional Issues are Beyond Scope of the Arbitration and Must be Answered
by the Court.......................................................................................................25

CONCLUSION.................................................................................................................26

## TABLE OF CONTENTS

**CASES**

*Acheron Portfolio Trust v. Mukamal*, No. 21-12111,

    2022 WL 16707942 (11th Cir. Nov. 4, 2022) ............................................................... 19

*Adams v. Lashify, Inc.*, 689 F. Supp. 3d 1146 (M.D. Fla. 2023) ....................................... 6

*Alabama City, G. & A. Ry. Co. v. Kyle*, 202 Ala. 552, 81 So. 54 (1918) ........................ 12

*Am. Gen. Fin., Inc. v. Branch*, 793 So. 2d 738 (Ala. 2000) ................................. 20, 21, 24

*Anderson v. Ashby*, 873 So. 2d 168 (Ala. 2003) .............................................................. 24

*Baker v. Rabren Gen. Contactors, Inc.*, 2020 WL 2145326 (M.D. Ala. May 5, 2020) ................... 6

*Barber v. Jefferson Cnty. Racing Ass'n Inc.,* 960 So. 2d 599 (Ala. 2006) ........................ 9, 10, 11

*Bazemore v. Jefferson Capital Sys., LLC,* 827 F.3d 1325 (11th Cir. 2016) ................................. 6

*Blue Cross Blue Shield of Alabama v. Rigas*, 923 So. 2d 1077 (Ala. 2005) ........................... 20, 21

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) .................................... 18

*Burch v. P.J. Cheese, Inc.,* 861 F.3d 1338 (11th Cir. 2017) .................................................. 6

*Cherry v. Pinson Termite & Pest Control, LLC*, 206 So. 3d 557 (Ala. 2016) ........................... 13

*CitiFinancial Corp. v. Peoples*, 973 So. 2d 332 (Ala. 2007) .............................................. 16

*Close v. Penney Opco LLC,* 3:24-cv-05756, 2025 WL 1721002 (W.D. Wash. June 20, 2025) ..... 14

*CNU of Ala., LLC v. Cox*, No. SC-2024-0060, 2024 WL 4716159, (Ala. Nov. 8, 2024) ................. 16

*CNU of Alabama, LLC v. Shakeena Cox*, No. SC-2024-0060,

    2024 WL 4716159 (Ala. Nov. 8, 2024) ................................................................ 20

*Coinbase, Inc. v. Suski*, 602 U.S. 143 (2024) ........................................................... 5, 6

*Coleman v. CVS Pharmacy, Inc.*, No. 2:24-cv-231-JTA,

    2025 WL 963066 (M.D. Ala. Mar. 31, 2025) ......................................................... 5

*Dickerson v. Deno*, 770 So. 2d 63 (Ala. 2000) ............................................................. 14

*Douglas v. Johnson Real Est. Invs., LLC*, 2011 WL 13177544 (N.D. Ga. Oct. 11, 2011),

    *aff'd,* 470 F. App'x 823 (11th Cir. 2012) ......................................................... 13, 14

*Dream, Inc. v. Samuels*, 392 So. 3d 462 (Ala. 2023) ................................................. 8, 16

*Dumais v. Am. Golf Corp.*, 299 F.3d 1216 (10th Cir. 2002) ............................................ 14

*Eldercare of Arkansas, IV, Inc. v. Gore*, 703 S.W.3d 158 (Ark. Ct. App. 2024) ......................... 13

*Ex parte Foster*, 758 So. 2d 516 (Ala. 1999) ............................................................. 22

*Ex parte Stripling*, 694 So. 2d 1281 (Ala. 1997) ............................................................ 24

*First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938 (1995) ............................................ 16

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ................................ 6, 18

*Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306 (6th Cir. 2000) ................... 15

*Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126 (7th Cir. 1997) ............ 15

*Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287 (2010) ...... 17

*Green Tree Financial Corp. of Alabama v. Vintson,* 753 So. 2d 497 (Ala. 1999) ................. 20

*H & S Homes, L.L.C. v. McDonald*, 823 So. 2d 627 (Ala. 2001) .................................. 8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019) ........................ 16

*Hooters of Am., Inc. v. Phillips*, 173 F.3d 933 (4th Cir. 1999) .................................... 15

*I.C.E. Contractors, Inc. v. Martin & Cobey Const. Co.*, 58 So. 3d 723 (Ala. 2010) .............. 15

*Jenkins v. Atelier Homes, Inc.,* 62 So. 3d 504 (Ala. 2010) .......................................... 7

*Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.***,** 162 F.3d 1290 (11th Cir. 1998) ............ 12

*Johnson v. Cont'l Fin. Co., LLC*, 131 F.4th 169 ....................................................... 14, 18

*Jones v. Waffle House, Inc.*, 866 F.3d 1257 (11th Cir. 2017) ...................................... 18

*Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055 (W.D. Wash. 2019) .................. 23

*Lamps Plus, Inc. v. Varela*, 587 U.S. 176 (2019) ...................................................... 6

*Larsen v. Citibank FSB*, 871 F.3d 1295 (11th Cir. 2017) ............................................ 17

*Leeman v. Cook's Pest Control, Inc.,* 902 So. 2d 641 (Ala. 2004) .............................. 22

*Leonard v. Terminix Int'l Co., L.P.*, 854 So. 2d 529 (Ala. 2002) ................................ 25

*Lloyd v. Serv. Corp. of Ala.***,** 453 So. 2d 735 (Ala. 1984) .......................................... 24

*Lucky Jacks Entm't Ctr., LLC v. Jopat Bldg. Corp.*, 32 So. 3d 565 (Ala. 2009) .............. 17

*Lyles v. Pioneer Housing Sys., Inc.*, 858 So. 2d 226 (Ala. 2003) ................................ 8

*Macon Cnty. Greyhound Park, Inc. v. Hoffman*, 226 So. 3d 152 (Ala. 2016) ....................... *passim*

*Marshall v. Mercury Fin. Co.*, 550 So. 2d 1026 (Ala. Civ. App. 1989) ...................... 22

*Mason v. Midland Funding LLC*, 815 F. App'x 320 (11th Cir. 2020) ......................... 5

*Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716 (4th Cir. 2025) ................... 14

*Opinion Of The Justices*, 795 So. 2d 630 (Ala. 2001) ................................................. 9

*Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63 (2010) ......................................... 6

*Roberson v. Money Tree of Ala., Inc.*, 954 F. Supp. 1519 (M.D. Ala. 1997) ............... 21

*Robinson v. Conn's, Inc.*, 2023 WL 3088157 (M.D. Ala. Apr. 25, 2023) ..................... 12

*Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981 (11th Cir. 2012)...................................17

*Spirit Airlines, Inc. v. Maizes*, 899 F.3d 1230 (11th Cir. 2018).......................................................19

*State v. $223,405.86*, 203 So. 3d 816 (Ala. 2016).........................................................................9

*State v. Epic Tech, LLC*, 378 So. 3d  467 (Ala. 2022)......................................................................9

*T.I.M.E.–DC, Inc. v. Trucking Emps. of N.J. Welfare Fund, Inc.*,

    560 F. Supp. 294 (E.D.N.Y. 1983) ..............................................................................26

*Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, 432 F.3d 1327 (11th Cir. 2005) ..........................19

*White Sands Grp., L.L.C. v. PRS II, LLC*, 998 So. 2d 1042 (Ala. 2008)....................................15

*Wilson v. Harris*, 688 So. 2d 265 (Ala. Civ. App. 1996) ............................................................11, 17

*Zynga*, Inc. v. Mills, 2025 WL 1198744 (Ala. Apr. 25, 2025) .......................................................11

## STATUTES

§ 8-1-150(a), Ala. Code 1975 ..........................................................................................................8

## TREATISES

1 Williston on Contracts § 7:6, at 77–79, 87 (Richard A. Lord ed., 4th ed. 2007).........................12

E. Allan Farnsworth, Farnsworth on Contracts § 2.13, at 75–76 (1990)........................................12

Plaintiff Amy Hurst ("Plaintiff"), by and through undersigned counsel, hereby responds in opposition to the Motion to Compel Arbitration ("Motion") filed by Defendant Moshy Gaming LLC d/b/a Moozi Casino ("Defendant" or "Moshy").

## INTRODUCTION

This case challenges Defendant's operation of an illegal online casino accessible to all Alabama residents through its game *Moozi Casino*. Through this game, Defendant sells coins to users, which are then wagered on casino-style games to earn cash prizes and gift cards. Defendant, which refers to itself as a "casino," even offers live dealer games to replicate the exact experience and feel of a brick-and-mortar casino. In effect, Defendant has found a way to smuggle slot machines and casino games into the homes of Alabama residents, 24 hours a day, 7 days a week, and 365 days a year.

There is no dispute that gambling has long been outlawed in Alabama. Nor is there any dispute that Alabama law renders void all contracts founded, even in part, on a gambling consideration. Since the State's founding, the Alabama Constitution has criminalized gambling and expressly prohibited the Legislature from legalizing it. For over 170 years, Alabama has also granted victims a statutory cause of action to recover gambling losses—an enduring effort to protect persons from its well-documented harms.

Defendant does not—because it cannot—dispute the strict nature of Alabama's gambling laws. Nor does it meaningfully address the merits of whether it is operating a gambling enterprise. Instead, it seeks to evade judicial scrutiny behind an arbitration clause buried in a version of its Terms of Service ("Terms"). In doing so, Defendant seeks to set a precedent that virtual slot machines and live dealer table games are effectively available in every Alabama household. Worse

still, compelling arbitration would insulate Defendant's illegal model from any judicial scrutiny, enabling it to continue exploiting Alabama citizens with impunity.

Defendant's Motion must be denied for several independent reasons.

First, as a threshold matter, Defendant has failed to meet its evidentiary burden of proving the existence of a valid arbitration agreement. The Terms it submitted are unsupported by any evidence showing that Plaintiff actually saw, accepted, or was bound by *those* specific Terms.

Second, even if Defendant submitted the applicable Terms, the arbitration clause—and the contract containing it—is based on gambling consideration and is therefore void under *Macon Cnty. Greyhound Park, Inc. v. Hoffman*, 226 So. 3d 152 (Ala. 2016). As the Alabama Supreme Court has held, when the subject matter of a contract is for gambling—as it is here—there is no agreement to enforce, let alone sever.

Third, an arbitration agreement was never validly formed because the Terms lack mutuality of obligations and mutual assent. The Terms are so one-sided that they strip any mutuality of real substance and are structured to favor Defendant at every turn. Moreover, Defendant reserves the right to unilaterally modify the Terms without providing any notice. This renders the contract illusory and unenforceable under Alabama law.

Fourth, it is for the Court—not an arbitrator—to decide whether the arbitration and delegation provisions were validly formed. That threshold issue goes to the heart of contract formation and legality, which are questions reserved for judicial resolution under Alabama law.

Fifth, even if a contract had been formed (it had not), the Terms—and arbitration provision contained within—is procedurally and substantively unconscionable. The Terms were presented on a take-it-or-leave-it basis with no opportunity for Plaintiff to negotiate or reject individual provisions. The Terms and arbitration clause is oppressive and one-sided, heavily favoring

Defendant by granting it exclusive rights to injunctive relief, unilateral fee recovery, limitations on liability, and limitations on available remedies, including punitive damages. Additionally, Defendant's claim that the Terms include a meaningful "opt-out" option is unsupported by the record. The provision Defendant relies on neither clearly informs users of a right to opt out nor provides any mechanism or instructions to exercise such a right. These defects render the arbitration clause both oppressive and unconscionable under Alabama law.

Sixth, even if the arbitration agreement were enforceable (it is not), it does not apply to Plaintiff's constitutional claim in Count I. That claim does not arise from or depend on Defendant's Terms, but instead challenges whether Defendant's operations violate Article IV, § 65 of the Alabama Constitution—an issue rooted in public law, not private contract. Arbitration cannot be compelled where the claim at issue lies beyond the scope of the agreement, particularly where it seeks relief independent of any contractual obligation.

## RELEVANT FACTUAL BACKGROUND

Defendant owns and operates Moozi Casino (https://moozi.com/lobby), one of the most popular and profitable casino and sweepstakes gaming websites on the planet. Compl. ¶ 2. Through Moozi Casino, users can access and play thousands of popular casino games, including, *inter alia*, jackpots, slots, roulette, baccarat, and megaways titles. *Id*. ¶ 3. In addition to automated games, Moozi Casino also offers a "live casino" feature, where users play games like dominos and roulette with live human dealers who are visible through webcam streams, closely mimicking the experience of a physical casino. *Id*. ¶¶ 3, 55. Players can purchase in-game currency, use that currency to wager on Defendant's games of chance, and subsequently redeem their winnings for cash or gift cards. *Id*. ¶ 6. Moozi Casino derives its revenue primarily through the sale of in-game currency—specifically, virtual coins—which function as a de facto substitute for real money and are necessary for users to

participate in games on the platform. *Id*. ¶ 7.

The platform features two forms of virtual currency: "Gold Coins" and "Sweepstakes Coins" or "Sweeps Coins." *Id*. ¶ 8. While Gold Coins are offered with promotional bonuses such as sign-up rewards and daily refills, ensuring continuous user engagement, they are *marketed* as having no real-world monetary value. *Id*. ¶ 8. However, Moozi Casino conceals the true nature of its business model and sale of Gold Coins. *Id*. ¶ 9. The purchase of Gold Coins is "bundled" with Sweeps Coins—another currency that *does* carry real-world value. *Id*. ¶ 9. Each Sweeps Coin is equal in value to $1 USD, which can be redeemed to win cash or gift cards, rendering Sweeps Coins a proxy for real money. *Id*. ¶¶ 10, 11, 59. In reality, Defendant uses the sale of Gold Coins as a vehicle for the sale of Sweeps Coins, misleadingly marketing the transaction to obscure the real-money nature of the exchange. *Id*. ¶ 60. Indeed, upon information and belief, the vast majority of players on the Moozi Casino platform regularly buy additional coin bundles when they run out of Sweeps Coins even when they already possess unused Gold Coins. *Id*. ¶ 59. The fact that players are making these repeated purchases when they have ample Gold Coins confirm that these transactions are driven entirely by the desire to obtain Sweeps Coins for real-money gambling, rather than for the Gold Coins that Defendant sells. *Id*.

Plaintiff believed that Moozi Casino was authorized to operate in Alabama. *See* Declaration of Amy Hurst ("Hurst Declaration") ¶ 5, attached hereto as **Exhibit A**. Plaintiff purchased, wagered, and lost Sweeps Coins on Moozi Casino's game. *Id*. ¶ 6. Plaintiff was not aware of the arbitration and delegation clauses within Defendant's Terms of Service. *Id*. ¶ 7. Nor was Plaintiff aware that Defendant reserved the right to amend the Terms of Service at its discretion. *Id*. ¶ 12. Additionally, Plaintiff was never informed of any opportunity to "opt-out" of the arbitration provision. *Id*. ¶ 8. Plaintiff had no opportunity to modify the terms of service. *Id*. ¶ 9. Plaintiff was not provided any

chance to provide input or request modification as to the terms of service. *Id.* ¶ 10. Plaintiff does not and has never agreed to arbitrate its claims with Defendant, and would not have registered if she knew about the arbitration and delegation clause. *Id.* ¶ 11.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") only applies to contracts involving interstate commerce, so "[b]efore the Court can determine whether the FAA requires enforcement of the delegation agreement, the Court must first determine whether the FAA's statutory scheme as a whole is applicable to the arbitration agreement." *Coleman v. CVS Pharmacy, Inc.*, No. 2:24-cv-231-JTA, 2025 WL 963066, at *7 (M.D. Ala. Mar. 31, 2025). If the FAA applies, then arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

A party can defeat a motion to compel arbitration by establishing there was no valid agreement to arbitrate or delegate and can do so by using arguments that apply to the contract as a whole. *Coinbase, Inc. v. Suski*, 602 U.S. 143, 151 (2024) ("But this rule does not require that a party challenge *only* the arbitration or delegation provision. Rather, where a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a court must address that challenge."). "If a party challenges the validity . . . of the precise agreement to arbitrate at issue, the federal court *must* consider the challenge before ordering compliance with that [arbitration] agreement." *Id.* (citation omitted; emphasis in original).

Defendant "bears the burden to prove" that the FAA applies and that enforceable arbitration and delegation agreements were formed. *Mason v. Midland Funding LLC*, 815 F. App'x 320, 327 (11th Cir. 2020). And the Court must "'apply ordinary state law principles that govern the formation of contracts' to determine if there is a valid agreement to arbitrate under the FAA." *Adams*

*v. Lashify, Inc.*, 689 F. Supp. 3d 1146, 1154 (M.D. Fla. 2023) (citation omitted). "In addition, the Eleventh Circuit has countenanced the use of the summary judgment-like standard to resolve a motion to compel arbitration." *Baker v. Rabren Gen. Contactors, Inc.*, 2020 WL 2145326, at \*3 (M.D. Ala. May 5, 2020) (Huffaker, J.) (citation omitted). "If, under a summary judgment-like standard, the district court concludes that there is no genuine dispute as to any material fact concerning the formation of such an agreement, it 'may conclude as a matter of law that [the] parties did or did not enter into an arbitration agreement.'" *Burch v. P.J. Cheese, Inc.,* 861 F.3d 1338, 1346 (11th Cir. 2017) (quoting *Bazemore v. Jefferson Capital Sys., LLC,* 827 F.3d 1325, 1333 (11th Cir. 2016)).

Despite Defendant's claim that the court should consider the policy favoring arbitration, the FAA "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010). Given that arbitration agreements are simply contracts, "[t]he first principle that underscores all of our arbitration decisions is that arbitration is strictly a matter of consent." *Lamps Plus, Inc. v. Varela*, 587 U.S. 176, 184 (2019) (cleaned up; citations omitted). Arbitration is "a way to resolve those disputes—but only those disputes—that the parties have agreed to submit to arbitration." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995). Accordingly, the FAA does not "favor" arbitration or "elevate [arbitration agreements] over other forms of contract," (which is "impermissibl[e]"). *Coinbase*, 602 U.S. at 152. Instead, it merely "places arbitration agreements on an equal footing with other contracts." *Rent-A-Center*, 561 U.S. at 67.

## ARGUMENT

**I.    Defendant has not met its Evidentiary Burden to Prove There was an Enforceable Contract.**

The moving party "seeking to compel arbitration must prove the existence of a contract

calling for arbitration." *Jenkins v. Atelier Homes, Inc.*, 62 So. 3d 504, 509 (Ala. 2010) (cleaned up). Defendant states that it has attached a true and correct copy of the Terms "applicable to Plaintiff Hurst's use of the Platform." ECF 21-1, Anne Hanson Declaration ("Hanson Decl.) ¶ 11. But Defendant provides no detail as to *why* those Terms are applicable—such as whether they were in effect at the time Plaintiff registered for the service, made purchases, or engaged in any conduct giving rise to the current dispute. There is no supporting evidence to show that the attached Terms were the version Plaintiff actually saw, agreed to, or was ever bound by.

This is especially important because Defendant's Terms appear to have been recently revised, including at least once after Plaintiff registered. A copy of the updated Terms of Service currently in effect is attached to the Declaration of Scott Edelsberg ("Edelsberg Decl."), attached hereto as **Exhibit B**. Defendant has offered no explanation as to why it failed to produce this newer version, nor has it informed the Court that its Terms have undergone updates. This silence undermines any assertion that Plaintiff knowingly assented to the specific version of the arbitration agreement now being enforced.

Critically, although the older and newer Terms contain similarly oppressive provisions, the newer version contains language that are even more one-sided and unconscionable. That may explain why Defendant declined to submit the current version to the Court.[1] But regardless of motive, the law requires a party moving to compel arbitration to provide the actual, operative contract that governs the parties' relationship—including the specific arbitration provision it seeks to enforce. *See Coinbase*, 602 U.S. at 151 ("courts cannot compel arbitration unless they are satisfied that the parties agreed to arbitrate"). The burden is on the movant—not the Plaintiff—to

---

[1] The updated terms of service impose even more onerous and burdensome arbitration requirements. To the extent the Court deems these terms to be the operative disclosure documents, Plaintiff respectfully requests leave to file supplemental briefing specifically addressing them.

prove the existence of a valid and enforceable arbitration agreement. Defendant cannot meet that burden by offering a generic, undated set of Terms and then vaguely asserting they "apply" to Plaintiff. Without any authentication, timeline, or evidence of Plaintiff's assent to that specific version, Defendant's Motion rests on speculation—not contract.

## II.    The Parties Never Formed an Arbitration Agreement.

Under Alabama law, "[t]he requisite elements of [a contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract." *Lyles v. Pioneer Housing Sys., Inc.*, 858 So. 2d 226, 229 (Ala. 2003) (citations omitted). Alabama also recognizes certain defenses to contract formation, such as unconscionability and fraud. *H & S Homes, L.L.C. v. McDonald*, 823 So. 2d 627, 630 (Ala. 2001) (citations omitted).

Here, there are genuine disputes of fact underlying the formation of the arbitration and delegation clauses because consideration and mutual obligations and assent are absent, and the arbitration and delegation agreements are unconscionable.

### a.    The Terms Containing the Arbitration and Delegation Clauses are Void Because They are Based on Gambling Consideration.

The Terms are void under Alabama law because they are based, at least in part, on gambling consideration. Alabama law is clear: "*[a]ll contracts* founded in whole or *in part* on a gambling consideration *are void*." § 8-1-150(a), Ala. Code 1975 (emphasis added). The statutory command is categorical. Contracts supported by gambling consideration are "void," not voidable. *Dream, Inc. v. Samuels*, 392 So. 3d 462, 466 (Ala. 2023) ("The language could hardly be more explicit. The statute declares that '[a]ll contracts,' not just some, are 'void,' not voidable, if those contracts are founded 'in whole or in part on a gambling consideration.'") (cleaned up; citations omitted).

Here, the arbitration and delegation clauses are part of the Terms of Service governing access to Defendant's online casino-style gaming platform. Defendant offers casino-style

platforms—live dealer games and slots machines—all of which repeatedly been deemed illegal gambling by Alabama courts. *State v. Epic Tech, LLC*, 378 So. 3d 467, 481 (Ala. 2022); *see also Hoffman*, 226 So. 3d at 152; *State v. $223,405.86*, 203 So. 3d 816 (Ala. 2016); *Barber v. Jefferson Cnty. Racing Ass'n Inc.,* 960 So. 2d 599, 610 (Ala. 2006); *Opinion Of The Justices*, 795 So. 2d 630, 643 (Ala. 2001). The entire platform has no purpose other than gambling. Defendant offers virtual coins that users purchase and use to play games for the chance to win cash-equivalent prizes. And Defendant's games are illegal even if some users never spend a dime playing:

> That the prize may go to someone who has paid nothing does not negative the fact that many have paid for their chance. Because some have not been drawn into the gambling phase does not render it any the less a lottery, with whatever of evil it engenders, as to the large public who have paid.

*Jefferson Cnty. Racing,* 960 So. 2d at 614 (citation omitted). After all, "[g]ratuitous entries obtained by mail or at the race track do not legitimize the high-stakes MegaSweeps any more than some opportunity for free plays could render innocuous a conventional slot machine." *Id*. at 615.

Even Defendant's marketing reinforces that it is a gambling operation. Its use of the term "casino" in its name and branding is not accidental—it is a public representation of the nature of its business. Defendant cannot simultaneously present itself to consumers as a casino while disavowing that characterization in litigation.

The Terms—which include the arbitration and purported delegation provision—explicitly state that the user's access to Defendant's platform for gambling is conditioned accepting those Terms: "[y]our access and use of Moozi, the Services, and the Materials are permitted in exchange for your acceptance of all provisions outlined in these Terms of Service. You acknowledge that such acceptance constitutes adequate consideration[.]" ECF 21-2 at 19. But Defendant knows—indeed, it intends—that the sole purpose of that access is to engage in its gaming platform, which consists of gambling: purchasing coins, wagering those coins, and redeeming winnings, including for cash-

equivalent prizes that are subject to IRS reporting. ECF 21-2 at 7-8. Thus, the entire contractual structure—including the arbitration and delegation provisions—is built on gambling consideration and is void under Alabama law.

This is precisely what the Alabama Supreme Court held in *Hoffman*, where an arbitration clause embedded in a contract for a gambling game (electronic bingo) was declared void where "the consideration for any agreement to arbitrate is the ability to participate in an electronic-bingo game. . . . Accordingly, the arbitration provision itself would constitute a void contract because it is, at least in part, based on illegal gambling consideration." 226 So. 3d at 167. The court emphasized that this rule applies when the entire agreement, including the arbitration clause, is intertwined with illegal activity. *Id*. at 168.

The same is true here. The arbitration and delegation provisions are designed solely to resolve disputes related to game play, coin purchases, and prize redemptions—all in furtherance of illegal gambling. There is no other legal purpose for the arbitration agreement. *Hoffman* is directly on point, and its holding compels the same result here.

Defendant may attempt to avoid this conclusion through boilerplate language in its terms stating: "We are not a gambling service … The Services are strictly for entertainment purposes, and we do not guarantee their legality in your jurisdiction." ECF 21-2 at 2–3. But Alabama courts look to substance, not labels. *Jefferson Cnty. Racing,* 960 So. 2d at 610-12 (courts examine whether players are paying to gamble regardless of how the product is described). Courts ask whether users are paying money to win prizes based on chance—not what the Terms say about it. Moreover, under Alabama precedent, contracts founded on gambling consideration cannot be legitimized by adding

disclaimers or incidental benefits. *See Wilson v. Harris*, 688 So. 2d 265, 270 (Ala. Civ. App. 1996).[2]

Defendant also incorrectly relies on *Zynga, Inc. v. Mills*, 2025 WL 1198744 (Ala. Apr. 25, 2025), to suggest that a contract based in whole or in part on illegal activity could still be enforceable. But *Zynga* says nothing of the sort. In *Zynga*, the plaintiffs never created accounts or played the games at issue. The trial court denied the defendant's motion to compel arbitration, finding no evidence that the non-signatory plaintiffs had agreed to a contract with the defendants or were seeking to enforce any contractual rights—instead, they asserted claims under a statute. *Id.* at *4. The Alabama Supreme Court reversed, holding that the plaintiffs' claims were derivative of the players' claims and that "the plaintiffs are standing in the legal shoes of the players and are bound by the arbitration provisions to the same extent as the players." *Id.* at *6. That's all. The *Zynga* Court did not address, let alone overrule or abrogate, *Hoffman*. Nor did it suggest that arbitration agreements embedded in gambling contracts are enforceable. *Hoffman* remains good law. In truth, the trial court's ruling in *Zynga* was based on non-signatory principles—not the legality of the underlying contract. *Zynga* merely clarifies that non-players asserting derivative claims are bound by the same contractual obligations, including arbitration, as the players themselves—if such obligations exist.

Since there is, at minimum, a genuine dispute as to whether a valid arbitration agreement exists, Defendant's Motion must be denied. *See Robinson v. Conn's, Inc.*, 2023 WL 3088157, at *1

---

[2] Defendant cannot attempt to circumvent Alabama's strict prohibition on gambling by offering some games for free. "Gratuitous entries obtained by mail or at the race track do not legitimize the high-stakes MegaSweeps any more than some opportunity for free plays could render innocuous a conventional slot machine[.]" *Jefferson Cnty. Racing,* 960 So. 2d at 615. As the Alabama Supreme Court explained, "[t]hat the prize may go to someone who has paid nothing does not negative the fact that many have paid for their chance." *Id.* (citation omitted). There is no genuine dispute Defendant offers games, accepts payments, and pays prizes—all of which is classic gambling under Alabama law.

(M.D. Ala. Apr. 25, 2023) (Huffaker, J.) (finding same).

      **b. There Were no Mutual Obligations, and Even if There Were, the Contract Remains Void.**

Defendant asserts that the "consideration supporting the Agreement is the parties' mutual promises to arbitrate." Mot. at 11. That is the only source of consideration Defendant identifies. But even on its own terms, the argument fails.

It is well settled that mutual promises can serve as consideration only if both sides are bound. *See Alabama City, G. & A. Ry. Co. v. Kyle*, 202 Ala. 552, 558, 81 So. 54, 60 (1918); *see also* 1 Williston on Contracts § 7:6, at 77–79, 87 (Richard A. Lord ed., 4th ed. 2007) (footnotes omitted); accord *Johnson Enters. of Jacksonville, Inc. v. FPL Grp., Inc.*, 162 F.3d 1290, 1311 (11th Cir. 1998); *see also* E. Allan Farnsworth, *Farnsworth on Contracts* § 2.13, at 75–76 (1990) ("If, however, 'one of the promises appears on its face to be so insubstantial as to impose no obligation at all on the promisor—who says, in effect, 'I will if I want to'—then that promise may be characterized as an 'illusory' promise,' i.e., 'a promise in form but not in substance.'") (cleaned up).

Here, there are no such binding promises. While Defendant claims both parties agreed to arbitration, the Terms are so one-sided that they strip any mutuality of real substance. The agreement is structured to favor Defendant at every turn. For instance, only Defendant is entitled to recover its attorneys' fees, investigation costs, and fees of collection agents. *Id*. The arbitrator's authority is also artificially limited: he or she is expressly prohibited from awarding punitive or exemplary damages. *Id.* These limitations substantially restrict Plaintiff's potential recovery, while preserving Defendant's right to obtain full relief. In addition, Defendant disclaims nearly all "liability or responsibility," including for any "property damage" loss resulting from the platform (*i.e.*, money lost), any claim of liability "for users engaging in illegal gambling" (*i.e.*, that it operates

an illegal gambling operation), and all "loss or damage" arising due to the platform's "Materials," which is defined broadly to include "all content, information or materials available on Moozi." ECF 21-2 at 3, 12.[3] Taken together, these provisions render the supposed "mutual agreement" to arbitrate fundamentally imbalanced. *See, e.g., Eldercare of Arkansas, IV, Inc. v. Gore*, 703 S.W.3d 158, 163 (Ark. Ct. App. 2024) (finding agreement lacked mutuality of obligations where arbitration agreement shielded defendant "from any real liability to arbitrate its most likely claims; thus, precedent declares that the arbitration agreement lacks mutuality and cannot be enforced.")*.* They do not reflect a mutual promise to arbitrate in any meaningful sense.

Even more fundamentally, Defendant retains the unilateral right to amend the Terms at any time, without notice, and with immediate effect. ECF 21-2 at 2. This means that Defendant's "promise" to arbitrate is binding only for so long as Defendant elects to be bound. Such a right renders any promise illusory under Alabama law. A party cannot bind others while reserving the right to unbind itself.[4]

Defendant cites *Cherry v. Pinson Termite & Pest Control, LLC*, but the court held there that "each promise must be enforceable to render the other enforceable." 206 So. 3d 557, 565 (Ala.

---

[3] Moreover, to the extent Defendant attempts to argue that the language of the release is ambiguous or does not mean what it plainly states, the Terms explicitly provide: "This release is intended by the parties to be broadly interpreted in favor of Moozi, and therefore any ambiguity shall be construed in a manner providing the release of the broadest claims." *Id.* at 16.

[4] The outcome is no different even if the arbitration is severed, as the provision permitting Defendant to change the terms also applies to, and is incorporated within, the arbitration clause. In other words, the amendment provision is a critical term of the arbitration provision, and one that Defendant has seemingly used to amend the arbitration provision after Plaintiff registered her account. Other courts in this Circuit have, with the Eleventh Circuit's approval, denied motions to compel arbitration based on amendment provisions in the contract as a whole, not just the arbitration clause specifically. *Douglas v. Johnson Real Est. Invs., LLC*, 2011 WL 13177544, at *2 (N.D. Ga. Oct. 11, 2011), *aff'd,* 470 F. App'x 823 (11th Cir. 2012).

2016). Defendant's promise here is enforceable only at its option—which is the hallmark of an illusory, unenforceable contract.

Moreover, even if Defendant's promise to arbitrate were mutual and binding (it is neither), the Terms are still void under Alabama law. The Alabama Supreme Court's decision in *Dickerson v. Deno*, 770 So. 2d 63 (Ala. 2000), is instructive. There, the plaintiff purchased lottery tickets for the defendant, who orally promised to buy the plaintiff a truck if he won. *Id*. at 64–65. Even though the consideration consisted solely of exchanged promises, the court held that the contract was void because it was "founded … on a gambling consideration." *Id*. at 66–67.

The same rule applies here. Even if Defendant's arbitration clause is viewed as supported by mutual promises (which it is not), and even if they are equally binding, such promises are still void under § 8-1-150 because they are inextricably tied to illegal gambling activity. Therefore, there is a genuine dispute as to whether the arbitration and delegation agreements were formed, so Defendant's Motion must be denied.

### c.   There is no Mutual Assent; the Contract is Illusory.

The arbitration provision—and the broader Terms—fails for lack of mutual assent because Defendant reserves the right to unilaterally modify the Terms without providing any notice. This renders the agreement illusory and unenforceable. *See, e.g., Close v. Penney Opco LLC,* 3:24-cv-05756, 2025 WL 1721002, at \*4 (W.D. Wash. June 20, 2025) ("no legally cognizable agreement to arbitrate exists" since defendant can change the terms without notice.); *Johnson v. Cont'l Fin. Co.*, *LLC*, 131 F.4th 169, 179 ("the change-in-terms clause here is so one-sided and so nebulous that it deprives the agreement of the kind of minimum reciprocity needed to form a contract"); *Meadows v. Cebridge Acquisition, LLC*, 132 F.4th 716, 728 (4th Cir. 2025) (arbitration clause valid even though defendant could change terms at any time, but only because there would be prior notice); *Douglas*, 2011 WL 13177544, at \*2 ("an [arbitration] agreement is invalid when

14

the employer can unilaterally modify the agreement without providing notice."); *Dumais v. Am. Golf Corp.*, 299 F.3d 1216, 1219 (10th Cir. 2002) ("We join other circuits in holding that an arbitration agreement allowing one party the unfettered right to alter the arbitration agreement's existence or its scope is illusory." (citing *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 315-16 (6th Cir. 2000)); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 939 (4th Cir. 1999); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1133 (7th Cir. 1997).

In Alabama, "one of the requisite elements of a valid contract is mutual assent to the essential terms of the contract." *I.C.E. Contractors, Inc. v. Martin & Cobey Const. Co.*, 58 So. 3d 723, 725 (Ala. 2010). This is especially true with bilateral contracts like the arbitration and delegation clauses here. If a promise can be changed at any time without notice, it is not a promise, the terms are not definite, and a contract was never formed in Alabama. *See White Sands Grp., L.L.C. v. PRS II, LLC*, 998 So. 2d 1042, 1051 (Ala. 2008) ("To be enforceable, the [essential] terms of a contract must be sufficiently definite and certain . . .. Even though a manifestation of intention is intended to be understood as an offer, it cannot be accepted so as to form a contract unless the terms of the contract are reasonably certain.") (cleaned up; citations omitted). Here, Defendant seemingly did change the terms in substantial ways after Plaintiff signed up. *See supra* Part IV. This unilateral, unbounded power to alter the agreement creates an illusory promise. Defendant's ability to modify the arbitration and delegation clauses at will undermines the very foundation of a binding bilateral contract.

As such, there is no enforceable agreement to arbitrate or delegate. The agreement fails for lack of consideration, lack of mutuality, and illegality under Alabama law.

### d. Severability Does not Salvage the Arbitration Provision.

Defendant contends that arbitration clauses are severable even when contracts are otherwise void. Mot. at 11–12. But this misstates Alabama law. Where a contract is founded on illegal

gambling consideration, *every provision*—including the arbitration clause—is void. In *Hoffman*, the Alabama Supreme Court squarely rejected the notion that arbitration clauses can be severed from a gambling contract, holding that when the contract's subject matter is illegal gambling, the agreement is void in its entirety. 226 So. 3d at 167.

This result follows from Alabama's fundamental distinction between contracts involving otherwise lawful activities (like employment, construction, or finance), which may include severable provisions, and contracts in which the *entire subject matter* is patently illegal—such as gambling. *See id.* at 168. In the latter category, the contract is a legal nullity from the outset and cannot be selectively enforced. *See CNU of Ala., LLC v. Cox*, No. SC-2024-0060, 2024 WL 4716159, at *4 (Ala. Nov. 8, 2024) (recognizing *Hoffman* held arbitration provisions void when founded on illegal consideration).

The same result is required here. Defendant's arbitration clause is not independent or free-standing—it is supported by, and inseparable from, the same illegal gambling consideration that infects the contract as a whole. Simply put, severability cannot resuscitate an arbitration clause founded on illegal gambling consideration. *See Dream, Inc. v. Samuels*, 392 So. 3d 462, 466 (Ala. 2023). Therefore, Defendant's severability argument must fail. Under Alabama law, a gambling contract is void in its entirety and must be treated by the Court as if it never existed—including its arbitration clause.

> **e. The Court—not an Arbitrator—Must Decide Arbitrability Because Formation and Illegality Are at Issue.**

Although arbitration is a matter of contract, the Court must first decide whether a valid arbitration agreement exists before compelling arbitration. *See Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 69 (2019) (noting that "before referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement exists"). A delegation clause can assign those

threshold issues to an arbitrator, but only where the parties "clearly and unmistakably" manifest that intent. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *see also CitiFinancial Corp. v. Peoples*, 973 So. 2d 332, 340 (Ala. 2007).

Even then, courts retain authority to decide challenges that go to the formation or legality of the arbitration clause itself. *See Granite Rock Co. v. International Brotherhood of Teamsters*, 561 U.S. 287, 297 (2010). The Supreme Court emphasized that "a court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate that dispute." *Id.* Thus, "the court must resolve any issue that calls into question the formation or applicability of the specific arbitration clause" before compelling arbitration. *Id*. at 299-300; *see also Solymar Invs., Ltd. v. Banco Santander S.A.*, 672 F.3d 981, 989 (11th Cir. 2012) (citing *Granite Rock* for the proposition that "issues concerning contract formation are generally reserved for the courts to decide," and stating that "such a determination is the threshold question in any dispute involving arbitration"). Thus, the Court—not the arbitrator—must decide whether a contract containing an arbitration provision was ever formed. *See Larsen v. Citibank FSB*, 871 F.3d 1295, 1303 (11th Cir. 2017) ("courts must undertake to resolve any issues relating to the formation of the arbitration agreement"). "The determination of whether a contract exists between the parties is governed ... by state law." *Solymar*, 672 F.3d. at 991.

Here, Plaintiff directly challenges the *formation and legality* of both the arbitration and delegation clauses, arguing they are void because they are founded on illegal gambling consideration. A void or nonexistent contract cannot delegate anything—let alone do so clearly and unmistakably." *See Hoffman,* 226 So. 3d at 161 ( holding that "a void or nonexistent contract cannot confer any authority upon anyone."). Because Alabama courts uniformly refuse to enforce any provision of a gambling contract—including arbitration—the Court cannot defer this threshold

issue to an arbitrator. *See Lucky Jacks Entm't Ctr., LLC v. Jopat Bldg. Corp.*, 32 So. 3d 565, 569 (Ala. 2009) (finding lease agreement void in its entirety based on it being for the unlawful purpose of gambling); *Wilson v. Harris*, 688 So. 2d 265, 270 (Ala. Civ. App. 1996). To compel arbitration here would require the Court to enforce provisions of an agreement that Alabama law declares a nullity.

Defendant's reliance on *Jones v. Waffle House, Inc.*, 866 F.3d 1257 (11th Cir. 2017), is misplaced. In *Jones*, the delegation clause expressly gave the arbitrator authority to decide issues of "interpretation, application, enforceability or *formation*." *Id.* at 1267 (emphasis added). That language clearly and unmistakably delegated arbitrability, including formation, to the arbitrator. But here, no such language exists. The crucial word—*formation*—is entirely absent from this delegation clause. Thus, *Jones* does not apply, and the Court must decide whether any enforceable arbitration agreement was ever formed.

Defendant also relies on *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) to argue it is irrelevant whether Alabama would void the contract, because federal substantive law applies. According to Defendant, under that federal substantive law, "the Arbitration Agreement is severable from the Terms and Conditions [and] any assertion that the Terms and Conditions are void as a gambling contract is for the arbitrator to resolve." Mot. at 11. But Defendant misunderstands *Buckeye* and misstates what federal law actually requires.

Federal substantive law requires the Court to apply state contract law and for Defendant to prove formation with clear and unmistakable evidence. *See First Options of Chicago,* 514 U.S. at 944. Thus, Alabama law governs the question of contract formation here. Moreover, *Buckeye* did not address questions of contract formation. 546 U.S. at 444, n.1 ("The issue of the contract's validity is different from the issue whether any agreement between the alleged obligor and obligee was ever concluded. Our opinion today addresses only the former . . .."). The Fourth Circuit

recently affirmed this distinction, holding that *Buckeye* "plainly applies to 'a challenge to the *validity* of [a] contract,' not a challenge to its *formation*." *Cont'l Fin. Co., LLC*, 131 F.4th at 176 (emphasis original). Therefore, *Buckeye* holds that questions of validity are for the arbitrator only if a valid agreement to arbitrate has been formed and such delegation has been clearly and unmistakably made. It does not apply to threshold formation questions, which remain squarely within the Court's authority.

### f. Mere Reference to "Following" AAA Rules is not Clear and Unmistakable Delegation.

Defendant argues that the arbitration clause's reference to "following the prevailing Commercial Arbitration Rules of the American Arbitration Association" delegates arbitrability. Mot. at 9-10. But courts consistently reject the notion that a passing reference to arbitral rules, without express incorporation, amounts to clear and unmistakable delegation.

The Eleventh Circuit has made this distinction explicit. In *Terminix Int'l Co. v. Palmer Ranch Ltd. P'ship*, the arbitration agreement expressly provided that arbitration "shall be conducted in accordance with the Commercial Arbitration Rules" of the AAA—an incorporation that sufficed to delegate arbitrability. 432 F.3d 1327, 1332 (11th Cir. 2005). Similarly, in *Spirit Airlines, Inc. v. Maizes*, the agreement stated disputes would be resolved "in accordance with the rules of the American Arbitration Association." 899 F.3d 1230, 1235–36 (11th Cir. 2018). In both cases, the court found a clear delegation based on explicit incorporation.

By contrast, in *Acheron Portfolio Trust v. Mukamal*, the court held that "mere mention" of JAMS or its rules was insufficient to delegate arbitrability. No. 21-12111, 2022 WL 16707942, at *3–4 (11th Cir. Nov. 4, 2022). The agreement there referenced JAMS generally but did not state arbitration would be "conducted in accordance with" JAMS rules. *See id*. The Eleventh Circuit concluded that the reference was "strong evidence" that the parties did not intend incorporation. *Id*.

The language in Defendant's clause is materially indistinguishable from *Acheron*. It states only that arbitration shall proceed "following the prevailing Commercial Arbitration Rules" of the AAA (ECF 21-2 at 13), not that it will be "conducted in accordance with" or "pursuant to" them. That linguistic distinction matters. Saying arbitration will "follow" AAA rules is at most a procedural suggestion; it does not amount to a wholesale incorporation of those rules, and certainly not a clear and unmistakable delegation of gateway issues. As *Acheron* confirms, such phrasing does not satisfy the demanding standard for delegation.

### g. The Arbitration and Delegation Clauses are Unconscionable

#### i. The Terms are Substantively Unconscionable.

Alabama recognizes unconscionability as a legal defense against the enforcement of contractual provisions. *See Am. Gen. Fin., Inc. v. Branch*, 793 So. 2d 738, 742 (Ala. 2000); *see also Green Tree Financial Corp. of Alabama v. Vintson,* 753 So. 2d 497, 504 (Ala. 1999)*.* Both arbitration and delegation clauses are subject to this doctrine and may be found unenforceable when they are based on illegal consideration or when their terms are excessively harsh or one-sided. The Alabama Supreme Court "precedent recognizes that it is 'unconscionable' to enforce an arbitration provision when it is itself based on illegal consideration." *CNU of Alabama, LLC v. Shakeena Cox*, No. SC-2024-0060, 2024 WL 4716159, at *5 (Ala. Nov. 8, 2024) (citing *Hoffman*, 226 So. 3d at 169).

Beyond the threshold issue, the arbitration and delegation clauses in this case are substantively unconscionable. Under Alabama law, substantive unconscionability:

> relates to the substantive contract terms themselves and whether those terms are unreasonably favorable to the more powerful party, such as terms that impair the integrity of the bargaining process or otherwise contravene the public interest or public policy; terms (usually of an adhesion or boilerplate nature) that attempt to alter in an impermissible manner fundamental duties otherwise imposed by the law, fine-print terms or provisions that seek to negate the reasonable expectations of the nondrafting party, or unreasonably and unexpectedly harsh terms having to

do with price or other central aspects of the transaction.

*Blue Cross Blue Shield of Alabama v. Rigas*, 923 So. 2d 1077, 1087-88 (Ala. 2005). Procedural unconscionability "on the other hand, deals with procedural deficiencies in the contract formation process, such as deception or a refusal to bargain over contract terms, today often analyzed in terms of whether the imposed-upon party had meaningful choice about whether and how to enter into the transaction." *Id*. at 1087 (cleaned up; citations omitted).

Here, the Terms is littered with provisions that overwhelmingly favor Defendant and deprive Plaintiff of fundamental legal rights. For example, the terms permit Defendant to unilaterally modify the agreement at any time without notice, while Plaintiff remains fully bound by any such changes even if they did not review the terms. *See* ECF 21-2 at 2. This one-sided provision gives Defendant absolute control over the contract and renders Plaintiff's assent meaningless. Defendant also reserves for itself the exclusive right to seek injunctive relief if there is a breach and damages are inadequate, denying Plaintiff access to the same equitable remedy language. *See id*. at 13, Section VII(c). The contract further requires Plaintiff to reimburse Defendant for any legal, investigative, or collection-related fees incurred in enforcing its rights, while providing Plaintiff no reciprocal right to recover fees. *Id.* Likewise, the agreement includes an overly broad, one-way indemnification clause that shifts all liability onto Plaintiff for any and "all claims [and] liabilities." *See id*. at 16, Section IX. The indemnification isn't even limited to solely Plaintiff's actions.

Most egregiously, the contract disclaims nearly all responsibility and liability on Defendant's part, including (1) property damage (i.e., money lost), (2) any loss or damage due to Moozi Casino's Materials (defined to include all "content, information or materials available on Moozi"), and (3) any claim of liability "for users engaging in illegal gambling." *Id*. at 2, 15-16.

Moreover, the arbitration clauses impose a cap on punitive and exemplary damages, effectively depriving Plaintiff of remedies that are otherwise available under Alabama law. As the Alabama Supreme Court has stated, "[i]t goes without saying that such damages may be recovered in litigation." *Branch*, 793 So. 2d at 749. These terms unreasonably limit the Plaintiff's ability to obtain redress and "the full panoply of relief available in state courts under Alabama law." *Roberson v. Money Tree of Ala., Inc.*, 954 F. Supp. 1519, 1526 (M.D. Ala. 1997).

Defendant's reliance on *Leeman v. Cook's Pest Control, Inc.,* 902 So. 2d 641, 645 (Ala. 2004) is misplaced. There, the Alabama Supreme Court held that the breadth of the arbitration clause—covering "any dispute, controversy or claim arising out of or relating to the agreement and guarantee"—did not, by itself, render the provision unconscionable. *Id.* at 652. The court noted broad arbitration clauses are common and do not inherently favor one party unless accompanied by other oppressive terms, such as limits on remedies or unequal access to arbitration. In contrast, Defendant's arbitration provision is not only broad in scope, but also reserves the right to be changed at any time without notice, purportedly delegates threshold issues of arbitrability (and unconscionability) to the arbitrator, limits recovery for punitive damages, and imposes one-sided limitations on liability.

Taken together, the contract is not merely unfavorable—it is oppressively one-sided. Defendant has crafted terms that shield it from nearly all liability (including this case), impose burdens solely on the Plaintiff, and restrict the availability of core legal remedies. These provisions do not reflect a fair allocation of risk or consideration, but rather an attempt to circumvent the legal rights of consumers. As such, the arbitration and delegation clauses are substantively unconscionable and must be held unenforceable under Alabama law.

### ii.  Procedural Unconscionability

Under Alabama law, procedural unconscionability addresses the circumstances surrounding the formation of the contract and whether one party lacked a meaningful choice. This may arise from factors such as deception, lack of negotiation, imbalance in bargaining power, or a "take it or leave it" presentation. *See Marshall v. Mercury Fin. Co.*, 550 So. 2d 1026, 1028 (Ala. Civ. App. 1989); *Leeman,* 902 So. 2d at 645; *Ex parte Foster*, 758 So. 2d 516, 520 n. 4 (Ala. 1999).

That is exactly what occurred here. The arbitration (and reference to AAA rules) were presented on a non-negotiable, "take it or leave it" basis by Defendant, a sophisticated actor, with no meaningful opportunity for Plaintiff to negotiate or reject them. Defendant's users, on the other hand, are relatively unsophisticated laypeople—possibly with a gambling addiction—who have no opportunity to negotiate any terms, let alone the arbitration provision. *See Kater v. Churchill Downs Inc.*, 423 F. Supp. 3d 1055, 1062 (W.D. Wash. 2019) (finding pop-up asking online casino users to agree to new terms coercive, noting that "[t]his ultimatum is made more coercive by the addictive nature of [the casino's] games and the fact that many players have already purchased chips that can only be accessed by agreeing to the terms"). Of course, access to Defendant's platform was conditioned entirely on acceptance of the Terms in full, including the purported arbitration clause. Plaintiff had no opportunity to modify the contract or decline the arbitration clause while still accessing Defendant's services. Hurst Declaration, ¶¶ 9-10. Indeed, the contract was presented as non-negotiable, and Plaintiff was given no chance to provide input or request modification. *See id.*

Defendant asserts there was no procedural unconscionability because the Terms contained an "opt-out" provision, presumably relying on the line "no waiver of the right to arbitration is valid unless expressly provided in writing by the waiving party." ECF No. 21-2, Section VII. This language is not an "opt-out" provision in any meaningful legal sense. It does not inform the user of

a right to reject arbitration, it does not explain how one could opt out, and it provides no deadline, procedure, or point of contact for doing so. It is at best a vague, unilateral disclaimer—and at worst, a misleading attempt to manufacture the appearance of user choice where none exists.

Simply put, the provision does not say that users may opt out. It merely states that a waiver (whatever this may mean)—by unspecified means and at an unspecified time—must be in writing by the waiving party. That does not constitute a valid opt-out clause, nor does it satisfy the legal requirement of clear and conspicuous notice. Moreover, the language in Section VII makes clear that only the "waiving party" may write and enforce such a waiver. As drafted, this provision serves to protect Defendant, not the user. It allows Defendant to refuse to recognize any waiver not "expressly provided in writing by the waiving party"—presumably Defendant itself—while failing to explain how, if at all, a user might exercise the same ability. This reinforces the one-sided and oppressive nature of the agreement.

Moreover, Plaintiff could not simply turn elsewhere for comparable services without encountering the same or similar arbitration clauses. At the time Plaintiff engaged with Defendant's platform, other competing providers of online gambling services similarly required mandatory arbitration as a condition of use. These market conditions eliminated the possibility of rejecting the clause without forfeiting access to an entire category of services. The Alabama Supreme Court has recognized this dynamic as indicative of procedural unconscionability. *See Lloyd v. Serv. Corp. of Ala.,* 453 So. 2d 735, 739 (Ala. 1984); *see also Anderson v. Ashby*, 873 So. 2d 168, 175 (Ala. 2003) ("A primary indicium of unconscionability in the modern consumer-transaction context is whether the consumer has the ability 'to obtain the product made the basis of [the] action' without signing an arbitration clause." (quoting *Branch*, 793 So. 2d at 750)).

In addition to being non-negotiable, the arbitration clause was not conspicuous. *See Ex parte*

*Stripling*, 694 So. 2d 1281, 1283 (Ala. 1997). The reference to the AAA rules and arbitration provisions was buried in Section VII of a 27-page document, without bolding, highlighting, or any other formatting designed to alert users. Notably, other provisions in the Terms appear in all capital letters, further diminishing the visibility of the arbitration clause. On the sign-up page itself, the link to the Terms appears in muted font or color, making it easy to overlook and deliberately designed to minimize attention.

Taken together, the lack of negotiation, imbalance in bargaining power, absence of meaningful alternatives, and concealment of critical terms all support a finding that the arbitration clause is procedurally unconscionable under Alabama law.

### III. Constitutional Issues are Beyond Scope of the Arbitration and Must be Answered by the Court.

Count I falls outside the scope of the arbitration and delegation clauses because it raises a constitutional question that is independent of any contractual dispute. Specifically, Count I seeks a declaratory judgment on whether Defendant's gambling games violate the Alabama Constitution's longstanding prohibition on gambling—a question that turns solely on state constitutional law, not on the parties' Terms of Service.

The arbitration clause at issue applies only to disputes "arising under these Terms of Service." Count I does not assert a contractual claim or seek relief under the Terms. Instead, Plaintiff asks the Court to interpret and apply a provision of the Alabama Constitution in the same manner it has applied to other forms of gambling for over a century. This constitutional inquiry does not arise from the contract and therefore falls outside the scope of the arbitration agreement and any delegation provision.

Moreover, the relief Plaintiff seeks—a binding judicial interpretation of state constitutional law—cannot be granted through private arbitration. Arbitration proceedings are inherently limited

in scope: they are confidential, non-precedential, and bind only the named parties. An arbitrator lacks the authority to render a public, binding interpretation of the Alabama Constitution. Relegating Count I to arbitration would effectively insulate Defendant from judicial scrutiny on a matter of public importance and chill future constitutional litigation. See *Leonard v. Terminix Int'l Co., L.P.*, 854 So. 2d 529, 538 (Ala. 2002) (holding arbitration clause unenforceable where it deprives plaintiff of a meaningful remedy).

It is well established that constitutional questions must be resolved by courts—not arbitrators or administrative bodies. *T.I.M.E.–DC, Inc. v. Trucking Emps. of N.J. Welfare Fund, Inc.*, 560 F. Supp. 294, 302 (E.D.N.Y. 1983). For these reasons, Count I must be adjudicated by the Court, not by an arbitrator.

## CONCLUSION

For all these reasons, Defendant's Motion to Compel Arbitration should be denied. Defendant has failed to establish the existence of a valid and enforceable arbitration agreement, and even if one existed, it would be void, unconscionable, and inapplicable to Plaintiff's constitutional claim. The threshold issues of contract formation and validity must be resolved by this Court—not an arbitrator.

Dated: September 26, 2025                    Respectfully submitted,


                                             /s/ David L. Selby, II
                                             David L. Selby, II (ASB-6994-Y62D)
                                             Matthew J. Ford (ASB-6725-W58F)
                                             BAILEY & GLASSER, LLP
                                             3000 Riverchase Galleria, Suite 905
                                             Birmingham, Alabama 35244
                                             T:      (205) 988-9253
                                             F       (205) 733-4896
                                             E:      dselby@baileyglasser.com
                                                     mford@baileyglasser.com

                                             Scott Edelsberg (*pro hac vice*, Fl. Bar No. 100537)
                                             EDELSBERG LAW, P.A.
                                             20900 NE 30th Ave, Suite 417
                                             Aventura, Florida 33180
                                             T:      (305) 975-3320
                                             E:      scott@edelsberglaw.com

                                             *Counsel for Plaintiff and the Proposed Class*


## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notice of this filing to all attorneys of record.


                                             /s/ David L. Selby, II
                                             David L. Selby, II